# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MISTY BERGER, an individual,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>MADISON COUNTY, a political subdivision of the state of Idaho, BRENT MCFADDEN, individually and in his official capacity, TONY POZENEL, individually and in his official capacity,<br><br>　　　　　　　　Defendants. | Case No. 4-12-cv-00535-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendants' Motion for Summary Judgment, filed on August 26, 2013. (Dkt. 23.) Plaintiff Misty Berger's complaint against her employer, Madison County, and two county officials, alleges her employment was wrongfully terminated. Her three causes of action assert deprivation of property rights without due process; retaliation for the exercise of her first amendment right to free speech; and violation of Idaho's whistleblower act.

The Court conducted a hearing on January 14, 2014, at which counsel for the parties appeared and presented oral argument. The matter involves a factual dispute over Berger's job termination, the resolution of which is distilled to a question of credibility and weight of the evidence. After carefully considering the parties' arguments, their written briefs, and applicable authorities, the Court will grant the motion in part, and deny the motion in part.

# FACTS[1]

Misty Berger commenced work for Defendant Madison County on April 11, 2004, as a seasonal, temporary maintenance laborer for Madison County's parks and recreation department. Aff. of Hall Ex. C, Berger Depo. at 34 (Dkt 23-12.)[2] Her duties included park reservations, events, interfacing with the public, park maintenance and cleaning, purchases for the department, and collection of park entry fees. *Id.*, Berger Depo. at 20, 44, 73. In late 2005, Berger was promoted to a supervisor position within the parks and recreation department. *Id.* at 44-45. In February of 2011, Defendant Brent McFadden was selected to become the Director of County Services. In that position, McFadden became Berger's direct supervisor. Compl. ¶¶ 10, 12.

On March 28, 2011, Berger voiced her opinion at a meeting with the County Commissioners that she did not believe McFadden was qualified for the position, and that McFadden had made threats to fire her and other employees if they "went over his head."

---

[1] The following facts are undisputed and material for purposes of Defendants' motion.

[2] The Affidavit of Blake Hall, (Dkt. 23-3), contains the cited portions of Misty Berger's deposition at Exhibit C, found at Dkt. 23-12.

Berger Depo. at 97-99 (Dkt. 23-12); Aff. of Lewies Ex. E, Berger Depo. at 91 (Dkt. 25-7);[3] Compl. ¶11. McFadden, however, was promoted to the position of General Services Director, becoming Berger's permanent supervisor, on March 28, 2011. Comp. ¶12.

Certain employees could use the County's credit card for official business. The County credit card statement dated March 26, 2011, and Request for Reimbursement dated April 5, 2011, show a charge for an airline ticket for McFadden and his spouse, each in the amount of $320.80. Compl. ¶¶ 16, 18; Aff. of Hall Ex. A (Dkt. 23-5 at 4); Ex. D, McFadden Depo. at 7-8 (Dkt. 23-14.) McFadden was traveling on official business, and Mrs. McFadden was accompanying him. McFadden Depo. at 8 (Dkt. 23-14). McFadden stated that he received authorization from the county clerk's office and the county commissioners to use the county credit card to purchase his wife's ticket, provided he paid the bank card issuer directly when the bill arrived. *Id.* at 9-10.[4] The Request for Reimbursement McFadden submitted indicates that on April 5, 2011, Mrs. McFadden issued a personal check to reimburse the $320.80 directly to the bank card company, and the County's credit card payment did not include payment for Mrs. McFadden's ticket. Aff. of Hall Ex. A (Dkt. 23-5 at 4); McFadden Depo. at 8 (Dkt. 23-14). The request for reimbursement notes in the upper left corner that it was approved on

---

[3] The Affidavit of Karl Lewies (Dkt. 25-2) contains additional portions of Misty Berger's deposition at Exhibit E, found at Dkt. 25-7.

[4] Berger contends in her Response to Defendants' Statement of Facts, ¶¶ 2-3, that she disputes whether she was "informed" about the prior approval given to McFadden to use the County credit card to purchase a flight for his wife, but she does not dispute McFadden's statement that he received advance permission.

**MEMORANDUM DECISION AND ORDER - 3**

April 11, 2011, "by Commissioners." *Id.* (Dkt. 23-5 at 4). The credit card payment was not due until April 17, 2011. *Id.*

On May 9, 2011, Berger attended a meeting with the County Commissioners and reported McFadden's use of the County's credit card to purchase an airline ticket for his wife. Berger Depo. at 106-108 (Dkt. 23-12); Berger Depo. at 90-91, 124 (Dkt. 25-7.) McFadden and Troy Evans, the Madison County Prosecuting Attorney, were present at the May 9th meeting. Berger Depo. at 108 (Dkt. 23-12.) Berger described the Commissioners as "appalled,"[5] but that she was verbally reprimanded by the commissioners for reporting the credit card incident. Berger Depo. at 108, 125-126 (Dkt. 25-7.) Berger believed the commissioners were covering up wrongdoing. *Id.* The County personnel policy indicates that use of the County's card for employee personal purchases constitutes misuse. Aff. of Hall Ex. A (Dkt. 23-5 at 14; 23-10 at 4, 6.)

On December 11, 2011, Berger was suspected of mishandling pubic funds, and placed upon administrative suspension without pay. Berger Depo. at 46 (Dkt. 23-12); McFadden Depo. Ex. 7 (Dkt. 25-8.) On February 16, 2012, Berger received a Notice of Proposed Personnel Action indicating she was subject to termination for mishandling public funds, among other policy violations. (Dkt. 25-8 at 10.) Berger appealed the Notice, and a hearing was conducted. McFadden Depo. Ex. 7 (Dkt. 25-8 at 10.)

---

[5] There was no follow up question asked to clarify whether Berger meant the Commissioners were appalled that she reported the incident, or appalled because McFadden used the County credit card for the airline purchase.

While on suspension, Defendant Pozenel cleaned out Berger's desk, and destroyed pages from a notebook found on her desk. Compl. ¶¶ 36-37. The notebook was Berger's personal property, and Berger reported the destruction of her notebook to law enforcement. Compl. ¶ 38-39. No charges against Pozenel were ever filed. *See SOF* ¶¶ 8, 9, and response (Dkt. 23-2; 25-1.)

On April 25, 2012, the County reinstated Berger's employment as the Parks and Recreation supervisor. McFadden Depo. Ex. 7 (Dkt. 25-8.) She was placed upon probationary status for six months. *Id.* Berger returned to work on April 30, 2012. Berger Depo. at 46-47 (Dkt. 23-12). Berger claims she was "set up to fail" upon reinstatement to her position. *Id.*, Berger Depo. at 116 (Dkt. 23-12.)

On April 30, 2012, Berger reported to law enforcement that she suspected McFadden of improper use of the county credit card. (Dkt. 23-4 at 13); Berger Depo. at 109, 114 (Dkt. 23-12.) Berger waited to report McFadden's credit card use to law enforcement over one year after the incident because she was afraid of losing her job, Berger Depo. at 127 (Dkt. 25-7), but decided to report it because her relationship with McFadden was "rapidly deteriorating," Berger Depo. at 109 (Dkt. 23-12).[6] An investigation by law enforcement ensued, during which McFadden was interviewed, and law enforcement did not pursue charges. Berger Depo. at 115 (Dkt. 23-12); McFadden Depo. at 32-33 (Dkt. 25-8). A news story was published on May 7, 2012, indicating that

---

[6] At the hearing, Berger's counsel reported an additional reason supporting why Berger waited to report the incident to law enforcement. However, the statements by counsel were not part of the record, and the Court ruled that it would not consider the comments by counsel.

**MEMORANDUM DECISION AND ORDER - 5**

McFadden was cleared of any charges; both Berger and McFadden saw the news report when it was published that day. Berger Depo. at 115 (Dkt. 23-12); McFadden Depo. at 37 (Dkt. 25-8).

On May 7, 2012, McFadden met with Berger and asked why she had disobeyed his directive and cleaned the park restrooms on Thursday instead of on Friday, according to the schedule McFadden had established. Berger Depo. at 89 (Dkt. 25-7); McFadden Depo. at 51 (Dkt. 25-8.) Also, McFadden informed Berger she would be reporting in the future to Pozenel, and not directly to McFadden. Berger Depo. at 89 (Dkt. 25-7.) Berger believed she was being demoted, but she was not told that her pay would be reduced. *Id.* at 123 (Dkt. 25-7.) During the course of the meeting, Berger "told [McFadden] to 'pound sand.'" *Id.* Berger stated also that "we could buy her out and be done with her." McFadden Depo. Ex. 10 (Dkt. 25-8.). McFadden then informed Berger her employment was terminated. *Id.* Pozenel and another county employee, Trish van Wagner, were present with McFadden during this meeting. *Id.*

A Notice of Proposed Personnel Action (Second Notice of Action) was prepared and issued on May 7, 2012. Berger Depo. at 47, Ex. 7 (Dkt. 23-13); Berger Depo. at 92 (Dkt. 25-7.) According to the Notice, Berger was notified that her employment would be terminated for failing to accept reorganization and for insubordination. *Id.* (Dkt. 23-13.) On May 16, 2012, Berger was formally notified that her employment would be terminated consistent with the May 7, 2012, Second Notice of Action. *Id*, Berger Depo. Ex. 9 (Dkt. 23-13.)

## ANALYSIS

**1.     Summary Judgment Standards**

A principal purpose of summary judgment is to "isolate and dispose of factually unsupported claims ...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 256–57. The non-moving party must go beyond the pleadings and show "by [its] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324.

**MEMORANDUM DECISION AND ORDER - 7**

The party bearing the burden of proof at trial "must establish beyond controversy every essential element of its ... claim." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003) (adopting decision of district court "as our own"). A party who does not have the burden "may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact." Fed. R. Civ. P. 56(c)(1)(B) (advisory committee's note.)

As a general rule, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *S. Cal. Gas Co.*, 336 F.3d at 889. An exception to this rule exists when cross-motions for summary judgment are filed. In that case, the Court must independently review the record for issues of fact. *Fair Housing Council of Riverside Co., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). Cross-motions for summary judgment—where both parties essentially assert that there are no issues of material fact—does not vitiate the court's responsibility to determine whether disputed issues of material fact are present. *Id*.

### 2. Due Process Claim Under the Fourteenth Amendment

Berger's second cause of action alleges deprivation of her property rights without due process under the Fourteenth Amendment. Compl. ¶ 43. Berger claims she maintained a personal journal in a notebook that she kept at work. Berger alleges that another county employee, Defendant Tony Pozenel, was directed by Defendant McFadden to clean out her desk while she was on suspension, and that when she returned, she discovered her journal was missing. Berger learned later that her journal had been destroyed because Pozenel had removed the pages containing the journal from

the notebook. Berger claims she has a constitutionally protected property interest in her journal. Compl. ¶ 41.

The Fourteenth Amendment to the United States Constitution protects individuals from the deprivation of liberty or property by the government without due process. A Section 1983 claim based upon procedural due process contains three elements: (1) a liberty or property interest protected by the United States Constitution; (2) a deprivation of that interest by the government; and (3) a denial of adequate procedural protections. *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). To state a claim, Berger first must establish she possessed a property interest deserving of constitutional protection. *Brewster v. Bd. of Educ. of the Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998); *see also Gilbert v. Homar*, 520 U.S. 924, 928–29 (1997). If a property interest exists, the essential requirements of due process are notice and an opportunity to respond. *See Cleveland Bd. of Educ. v. Loudermill et al.*, 470 U.S. 532, 546 (1985). The Due Process Clause does not create substantive property rights; property rights are defined instead by reference to state law. *Portman*, 995 F.2d at 904.

A prerequisite, therefore, is determination of whether Berger possessed a constitutionally protected property interest in her journal, an item of personal property. *See Dyack v. Commonwealth of N. Mariana Islands*, 317 F.3d 1030, 1033 (9th Cir. 2003) (citing *Loudermill*, 470 U.S. at 538). The destruction of Berger's personal property---her journal---is not an act of constitutional dimension. The United States Supreme Court has consistently held that the negligent or intentional deprivation of personal property without due process is not a cause of action protected by the Constitution, so long as

there is a state remedy.[7] *Mertens v. Shensky*, No. CV-05-147-N-EJL, 2006 WL 173651 *2 (D. Idaho Jan. 23, 2006) (citing *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).

Berger has failed to state a claim under the Fourteenth Amendment against Defendants. Because this claim was the only count asserted against Defendant Pozenel, he should be dismissed as a named defendant from the lawsuit.[8]

## 2. Retaliation for Exercise of Free Speech Under the First Amendment

Berger alleges that, when she reported McFadden's suspected misuse of public funds to the Madison County Sherriff's Office, she was speaking as a private citizen on a matter of public concern, and then terminated from employment because of the exercise of her First Amendment rights. (Compl. ¶¶ 28-30.) To state a claim against an employer for violation of the First Amendment, Berger must show (1) that she engaged in protected speech; (2) that the employer took "adverse employment action;" and (3) that her speech was a "substantial or motivating" factor for the adverse employment action. *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003).

---

[7] Berger reported the missing notebook to the police, suggesting she believed the destruction constituted theft. Alternatively, Berger may be able to obtain redress under the Idaho Tort Claims Act for an alleged tortious deprivation of her personal property. *See Carr v. Tousley*, No. CV–06–0125-S-JLQ, 2009 WL 1514661 *35 (D. Idaho May 27, 2009) (holding that prison inmate had no due process claim against jail officials for the removal of his personal property during a search of his cell, and could bring a claim under the Idaho Tort Claims Act instead).

[8] The parties did not brief the issue of Berger's constitutionally protected property right in her personal journal. Instead, they argued that Pozenel was merely negligent, and that the unintentional act of destroying Berger's personal property did not constitute a violation of due process under the Fourteenth Amendment. But Berger's interest in her journal does not rise to the level of a constitutionally protected property right. The Court inquired of the parties at the hearing, and Berger conceded that if the due process claim was dismissed, Defendant Pozenel could be dismissed as a named defendant.

For the speech to be protected at step one, the Court must determine (1) whether the speech at issue "'touch[ed] on a matter of public concern;'" if so, (2) whether "'the interests of the [employee], as a citizen, in commenting upon matters of public concern [outweighed] the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees;'" and (3) whether the employee spoke as a public employee or instead as a private citizen. *Posey v. Lake Pend Oreille School Dist. No. 84*, 546 F.3d 1121, 1127 (9th Cir. 2008). Once the employee establishes the first three elements, the burden shifts—the government can escape liability by showing that it would have taken the same action even in the absence of the protected conduct. *Keyser v. Sacramento City Unified School Dist.*, 265 F.3d 741, 750 (9th Cir. 2001).

An employee's speech is protected under the First Amendment if it addresses "a matter of legitimate public concern." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 571 (1968). "[S]peech that concerns 'issues about which information is needed or appropriate to enable the members of society' to make informed decisions about the operation of their government merits the highest degree of first amendment protection." *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir.1983) (quoting *Thornhill v. Alabama*, 310 U.S. 88, 102 (1940)). On the other hand, speech that deals with "individual personnel disputes and grievances" and that would be of "no relevance to the public's evaluation of the performance of governmental agencies" is generally not of "public concern." *Id*. The determination of whether an employee's speech deals with an issue of public concern is made with reference to "'the content, form, and context'" of the speech. *Allen*, 812 F.2d at 430 (quoting *Connick*, 461 U.S. at 147). The Court finds, for purposes of the County's

motion, Berger spoke to both the Commissioners and law enforcement about a matter of public concern. *See Keyser*, 265 F.3d at 750 (discussing allegations of misuse of public funds).

The second element of protected speech is whether the employee spoke in her capacity as an employee or a citizen. If the employee's speech constitutes "work product" that "owes its existence to [an employee]'s professional responsibilities," the speech falls within an employee's job responsibilities and thus outside of the sphere of First Amendment protection. *Posey*, 546 F.3d at 1127. The determination whether the speech was spoken as a public employee or a private citizen is a mixed question of fact and law. *Id.* at 1129.

In this case, Berger alleges she was speaking as a citizen on a matter of public concern when she reported McFadden's suspected misuse of public funds to law enforcement.[9] Compl. ¶ 28. *See Posey*, 546 F.3d at 1130 (commenting that "'communication on matters relating to the functioning of government ...' [such as] misuse of public funds, wastefulness, and inefficiency in managing and operating government entities are matters of inherent public concern."). Further, Berger's speech did not concern matters related to her employment duties as a parks and recreation supervisor. *See Posey*, 546 F.3d at 1129 (considering the scope of the plaintiff's employment duties in determining whether the speech related to a public concern). She

---

[9] Defendants assert that Berger cannot assert both a whistleblower claim under Idaho state law and a First Amendment claim, because the two are mutually exclusive. Defendants argue that Berger acts in her public capacity as a whistle blower, and so she cannot also be acting as a private citizen for purposes of the First Amendment. The Court will address this issue later.

did not speak out about matters affecting the parks per se, but rather about the misuse of a government credit card per County policy.

When a government employee exercises her protected right of free expression, the government cannot use the employment relationship as a means to retaliate for that expression. *Coszalter*, 320 F.3d at 974. The employee must show that retaliation was a substantial or motivating factor behind a defendant's adverse employment actions. *Coszalter*, 320 F.3d at 977. There are three ways a plaintiff can show that retaliation was a substantial or motivating factor behind an employer's adverse employment action. *Keyser v. Sacramento City Unified School District*, 265 F.3d 741 (9th Cir.2001). First, a plaintiff can introduce evidence regarding the "'proximity in time between the protected action and the allegedly retaliatory employment decision'" from which a "'jury logically could infer [that the plaintiff] was terminated in retaliation for his speech.'" *Id*. at 751 (quoting *Schwartzman v. Valenzuela*, 846 F.2d 1209, 1212 (9th Cir.1988)). Second, a plaintiff can introduce evidence that "his employer expressed opposition to his speech, either to him or to others." *Id*. Third, the plaintiff can introduce evidence that "his employer's proffered explanations for the adverse employment action were false and pre-textual." *Id*. at 752.

There is no dispute that both McFadden and the County Commissioners knew of Berger's complaint about McFadden's use of the credit card. She first voiced her complaint to the Commissioners on May 9, 2011, shortly after the March 2011 credit card statement arrived. Although Berger alleges that the Commissioners verbally reprimanded her for reporting the credit card incident, there is no evidence that any adverse

**MEMORANDUM DECISION AND ORDER - 13**

employment action followed on the heels of this reprimand. Berger's suspension did not occur until December of 2011, and she was reinstated to her position on April 25, 2012. Moreover, there is no evidence that McFadden, who was ultimately responsible for the May 7, 2012 termination decision, ever spoke publically against Berger's speech, either in May of 2011, or when she reported the credit card use to law enforcement on April 30, 2012.

Thus, the only adverse action tied to Berger's speech is the May 7, 2012 termination. Berger argues that her termination on May 7, 2012, was a result of her report to law enforcement on April 30, 2012, and the ensuing seven day investigation. The materials submitted to the Court contain circumstantial evidence that creates an issue of disputed fact regarding Berger's termination. A jury could infer that Berger's report to law enforcement on April 30, 2012, was a motivating factor behind the May 7, 2012, adverse employment action because of its close proximity in time. The jury could also reasonably interpret McFadden's confrontation with Berger over cleaning the restrooms one day early as trivial, and they could believe Berger's opinion that reporting to Pozenel constituted a demotion. Further, McFadden knew of the report to law enforcement, and the investigation was reported to the local paper. Given the facts, a jury reasonably could infer that Berger's employment was terminated in retaliation for her speech, and that her insubordination provided a convenient opportunity to do so. *Schwartzman*, 846 F.2d at 1212.

Generally, a jury must decide the issue of motivation. *Allen v. Scribner*, 812 F.2d 426, 436 (9th Cir. 1987). It is not for the Court to determine credibility or to comment on

the weight of the evidence upon summary judgment.[10] Because the Court finds there is a genuine dispute of material fact regarding causation, the Court need not analyze whether Defendants established justification for the adverse employment action.

3. **Violation of Idaho Code 6-2101**

The Idaho Protection of Public Employees Act ("Idaho Whistleblower Act"), Idaho Code §§ 6-2101—6-2109, provides "a legal cause of action for public employees who experience adverse action from their employer as a result of reporting waste and violations of a law, rule or regulation." Idaho Code § 6-2101. To protect an employee from adverse action, the Act prohibits an employer from taking adverse action against an employee "because the employee, or a person authorized to act on behalf of the employee, communicates in good faith the existence of any waste of public funds, property or manpower, or a violation or suspected violation of a law, rule or regulation adopted under the law of this state or the United States. Such communication shall be made at a time and in a manner which gives the employer reasonable opportunity to correct the waste or violation." Idaho Code § 6-2104(1)(a).

To establish a cause of action under the Act, the plaintiff must show, "by a preponderance of the evidence, that the employee has suffered an adverse action because

---

[10] Defendants cite to *Knickerbocker v. City of Stockton*, 81 F.3d 907 (9th Cir. 1996), for their argument that mere adverse action following close on the heels of protected activity does not compel an inference of retaliation where other evidence provides a reasonable basis for inferring that adverse action was not retaliatory. Defendants contend that Berger's comments to McFadden, and her insubordination, formed the basis for the adverse employment decision, not her report to law enforcement, and that the proximity in time does not compel an alternate conclusion. However, *Knickerbocker* is distinguishable. In that case, the court conducted a bench trial, and was therefore permitted to weigh the evidence and assess credibility. Under such circumstances, the standard of review on appeal was one for clear error. That is not the case here, where the Court is presented with the issue upon motion for summary judgment.

**MEMORANDUM DECISION AND ORDER - 15**

the employee . . . engaged or intended to engage in an activity protected under section 6-2104, Idaho Code." Idaho Code § 6-2105(4). To survive summary judgment, Berger must only present evidence from which a rational inference of retaliatory discharge under the Act could be drawn. *Curlee v. Kootenai County Fire & Rescue*, 224 P.3d 458, 464 (Idaho 2008). On motion for summary judgment, the Court is not to consider the employer's rationale for discharge, nor require the employee to dispute the employer's proffered non-discriminatory reasons for discharge. *Id.* at 463—64. (holding that the *McDonnell Douglas* burden shifting analysis does not apply at the summary judgment stage under the Act).

A prima facie case for retaliatory discharge under the Act requires Berger to show: (1) she was an "employee" that engaged or intended to engage in protected activity; (2) her "employer" took adverse action against her; and (3) the existence of a causal connection between the protected activity and the employer's adverse action. There is no dispute that Berger was employed by the County, and she was terminated from her employment. *See* Idaho Code § 6-2103; *Curlee*, 224 P.3d at 464.

Defendants argue Berger cannot simultaneously bring a claim under the Act and under the First Amendment, because the two claims are mutually exclusive. Defendants argue that Berger acts in her public capacity as a whistleblower, so she cannot also be acting as a private citizen for purposes of the First Amendment. The Court finds no authority to support Defendants' argument. Nothing in the Act suggests that Berger must meet anything other than the definition of an "employee" working for a public "employer." An "employee" is someone who "performs a service for wages or other

remuneration." Idaho Code § 6-2103(3). An "employer" means the "state of Idaho, or any political subdivision or governmental entity . . . . [or] a county, city, town, regional governing body, [or] council.…" Idaho Code § 6-2103(4)(a), (c).

There is no requirement under *Curlee* or Idaho Code § 6-2104 that an employee be acting in a "public capacity," only that she meets the definition of employee and her employer meets the definition of "employer." In other words, a claim under the Act is available only to public employees, not private citizens. But it does not follow that a public employee cannot also bring a First Amendment claim. If Defendants' argument were accepted, a public employee could never bring a First Amendment claim, because she always would be acting in a "public capacity" by virtue of her employment.

As for causation, for the same reasons the Court cannot decide in favor of Defendants on Berger's First Amendment Claim, it cannot so decide on this claim. "Although there must be something more than pure speculation or conjecture, circumstantial evidence may provide an inference of causation. Proximity in time between the protected activity and the adverse employment action is 'particularly significant.'" *Curlee*, 224 P.3d at 464 (quoting *Heng v. Rotech Med. Corp.*, 688 N.W.2d 389, 399 (N.D. 2004). The close relation in time between the very public investigation conducted by law enforcement and the termination of Berger's employment would support a reasonable inference that Berger was discharged for her speech, as previously explained above.

Defendants argue that the only reasonable inference a juror could make is that Berger's termination was the result of her insubordination and her refusal to comply with

McFadden's order to report to Pozenel. But, at this stage, it is not for the Court to weigh the evidence. Although a jury ultimately may decide the County did not discharge Berger in retaliation for her report to law enforcement, "that determination belongs to the jury at trial and not the judge at the summary judgment stage." *Curlee*, 224 P.3d at 464. Berger has presented material facts sufficient to establish a genuine dispute.

Finally, Defendants contend that Berger's speech was not protected under the Act, because she did not communicate her concerns to law enforcement in "good faith." Rather, Defendants argue Berger's report to law enforcement was driven by animosity toward McFadden. For support, Defendants point out that Berger reported the issue to the Commissioners, and then waited over one year to report the incident to law enforcement.

"Good faith" under the Act is defined as having a "reasonable basis in fact for the communication. Good faith is lacking where the employee knew or reasonably ought to have known that the report is malicious, false or frivolous." Idaho Code § 6-2104(1)(b). Here, the Court finds there is a genuine dispute as to the material facts regarding determination of good faith. The County's ethics manual and personnel policy indicates that use of the County's credit card for employee personal purchases constitutes misuse. Berger stated that she reasonably believed the County was covering up McFadden's misconduct, and that McFadden should not have been permitted to use the credit card to purchase his wife's airline ticket, even if he paid the bank card issuer directly. Berger explained she waited to report the incident because she was afraid of losing her job, and she was not yet reinstated to her position.

Although the jury could infer otherwise considering the timing of events and the credibility of the witnesses, such is not for the Court to decide on summary judgment. *Curlee*, 224 P.3d at 467 ("Whether an employee has made a report in good faith is a question of fact ….")

## CONCLUSION

Although Berger's evidence is not particularly strong, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Allen*, 812 F.2d at 437 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Accordingly, the Court will deny Defendants' motion for summary judgment with respect to Berger's first and third causes of action. But there is no dispute that Berger's notebook containing her journal constitutes personal property undeserving of protection under the due process clause of the Fourteenth Amendment; summary judgment will be granted with respect to Berger's second cause of action, and Defendant Tony Pozenel will be dismissed as a party defendant to this action.

# ORDER

**NOW THEREFORE IT IS HEREBY ORDERED that** Defendants' Motion for Summary Judgment (Dkt. 23) is **GRANTED IN PART AND DENIED IN PART** consistent with the Court's opinion.

**IT IS FURTHER ORDERED that:**

The Clerk is directed to terminate Defendant Tony Pozenel as a party defendant to this action.

A five (5) day jury trial will be set in Pocatello, Idaho by separate order.

Dated: **January 21, 2014**

Honorable Candy W. Dale
United States Magistrate Judge